## WILLIAM DICKINSON *vs.* CENTRAL NATIONAL BANK.

Worcester.   Oct. 2, 1879. — Sept. 16, 1880.   ENDICOTT & LORD, JJ., absent.

The owner of shares of stock in a national banking association delivered his certificate of stock, together with a power of attorney to transfer the same, to secure his promissory note; and, more than four months afterwards, became a bankrupt, and an assignee in bankruptcy was appointed. Subsequently, the note being due and unpaid, the payee, after notice to the bankrupt and his assignee, sold the stock by public auction, under the Gen. Sts. c. 151, § 9. The assignee subsequently demanded of the bank a transfer of the stock to himself, but the bank refused, and afterwards transferred the stock to the purchaser at the sale. The by-laws of the bank provided that its stock should be assignable only on its books, subject to the restrictions and provisions of the U. S. Rev. Sts. § 5139, and a transfer book should be kept, in which all assignments and transfers of stock should be made; and that when stock was transferred, the certificates thereof should be returned to the bank and cancelled, and new certificates issued. *Held*, that the assignee could not maintain an action against the bank for the conversion of the stock. *Held, also*, that evidence that it was agreed, at the time of the original delivery of the certificate and power of attorney, to keep the transaction secret, in order that the transferrer, who was a director of the bank, might obtain a false credit at the bank, was inadmissible, in the absence of proof that the bank had knowledge or notice of such agreement.

TORT by the assignee in bankruptcy of Lucius W. Pond against a bank organized under the laws of the United States,

for the conversion of ten shares of its capital stock. Trial in the Superior Court, without a jury, before *Allen*, J., who allowed a bill of exceptions, in substance as follows:

On April 13, 1866, Pond became owner of the ten shares; and the bank issued to him a certificate on that day which contained the clause that the shares were "transferable only on the books of the bank by the said Pond or his attorney, on the surrender of this certificate."

On April 11, 1871, Pond signed and delivered a promissory note to the firm of A. G. Coes & Co. for $1500, payable on demand, with interest, at the rate of ten per cent per annum, payable semiannually. At the same time he delivered to the firm, as collateral security for the note, the certificate above mentioned, and executed on a separate paper a power of attorney, authorizing the firm to transfer the ten shares of stock to any person, and to make and execute the necessary acts of assignment.

On October 22, 1875, Pond became a bankrupt, and on November 10 of the same year the plaintiff was appointed his assignee.

Interest was paid on the note to April 11, 1875; and on December 18 of that year John H. Coes, the surviving partner of the firm, the note being due and unpaid, served a notice on Pond and the plaintiff, which, after reciting the debt and the collateral security, stated that the shares of stock would be sold by public auction on February 21, 1876. This notice and an affidavit of its service were recorded in the city clerk's office in Worcester, where all the parties lived.

On February 15, 1876, the plaintiff, as assignee of Pond, demanded of the defendant a transfer of the shares to himself; but the defendant refused to make the transfer; and on July 19, 1877, transferred the shares on the books of the bank to one Lovell, who purchased the shares at the sale made by Coes on February 21, 1876, Lovell giving the bank a bond of indemnity.

The by-laws of the bank relating to the transfers of stock were as follows:

" The stock of this bank shall be assignable only on the books of this bank, subject to the restrictions and provisions of the act, and a transfer book shall be kept, in which all assignments and transfers of stock shall be made. Transfers of stock shall

not be suspended preparatory to a declaration of dividends, and, except in cases of agreement to the contrary expressed in the assignments, dividends shall be paid to the stockholders, in whose name the stock shall stand on the day on which the dividends are declared."

"The form of certificates of stock shall be prescribed by the directors, and shall be signed by the president and cashier, and shall state upon the face thereof that the stock is transferable only upon the books of the bank, and when stock is transferred the certificates thereof shall be returned to the bank and cancelled, and new certificates issued."

The plaintiff also offered to show, that, from April 13, 1866, down to the time of his bankruptcy, Pond acted as a director of the defendant bank; that Coes & Co. and Pond, at the time of the delivery of the certificate and of the execution of the power of attorney, agreed to keep the same a secret, and agreed that the stock should not be transferred, in order that Pond might obtain a false credit by being the ostensible owner of the stock, and by remaining a director of the bank, and might thereby be enabled to induce the defendant to discount his notes, and other persons to give him credit; and that he did thereby obtain a credit which induced many persons, whose claims have been proved in bankruptcy, to trust him for the debts so proved. It was not contended that substantially all the creditors of Pond knew of his apparent ownership of this stock, and of his acting as director.

The judge excluded the evidence offered; and found for the defendant.   The plaintiff alleged exceptions.

*G. F. Hoar & R. Hoar*, for the plaintiff.

*F. T. Blackmer*, for the defendant.

COLT, J.   It was decided in *Fisher* v. *Essex Bank*, 5 Gray, 373, that the shares in a bank whose charter provides that they shall "be transferable only at its banking-house and on its books," cannot be effectually transferred, as against a creditor of the vendor, who attaches them without notice of any transfer, by a delivery of the certificates thereof together with an assignment and blank power of attorney from the vendor to the vendee, even if notice of such transfer be given to the bank before the attachment   The express provision of the charter

regulating the mode of transfer was declared to have the force of a general provision of law binding on the corporation and its stockholders, and on all other persons.

But it was decided in *Sargent* v. *Essex Marine Railway*, 9 Pick. 201, that an assignment of shares by deed, accompanied by delivery of the certificates to the purchaser, was valid between the parties, and against attaching creditors, although the by-laws of the corporation required that all transfers should be made in the treasurer's books. The provisions of the by-laws were declared to be "an arrangement of the corporation for their own convenience, and is so far binding upon purchasers that they cannot compel any payment of dividends, or insist upon certificates, without applying to have a transfer made conformably to the by-laws." In the absence of any rule to be found in the general laws, or in some express provision of the charter, determining what shall constitute an actual transfer of shares in a corporation, the rules which govern the transfer of similar property at common law must be applied.

The laws of the United States, under which all national banking associations are organized, declare that "the capital stock of each association shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association." U. S. Rev. Sts. § 5139. It is contended by the plaintiff that this clearly prohibits a transfer of shares except on the books of the corporation; while the defendant insists that the provision was intended only to give to the corporation the usual power to regulate, by its own by-laws, the manner of keeping a record of the transfers of its own stock upon its own books, as a means of protection in the matter of making dividends, conducting elections of officers, and other corporate proceedings; and that it does not forbid a transfer of title in other legal modes.

It is not necessary now to decide this question. It is enough in the present case for the bank to show that the new certificate for Pond's stock was issued to one who had become the owner of the shares by a title good against Pond's assignee in bankruptcy. As between Pond and Coes & Co., the delivery of the certificate, as collateral security for a debt due the latter, with

a power of attorney to transfer the shares and execute an assignment of them to any other person, conferred a power coupled with an interest, and gave to any one claiming under an execution of the power a right to demand of the bank a certificate of the stock.

The subsequent bankruptcy of Pond did not operate to vest in the plaintiff, as his assignee, a right to the shares in question, as against Coes & Co., or give him a right to prohibit the bank, upon the surrender of the old certificate, from issuing a new certificate to the person to whom they were transferred under the power of attorney. The delivery of the stock as security for a debt, with the execution of the power of attorney, gave to Coes & Co. a power coupled with an interest, which was not revoked by the bankruptcy of Pond, and could only be revoked by the payment of the debt. *Hunt* v. *Rousmanier*, 8 Wheat. 174. Story on Agency, §§ 477, 482. The assignee under the bankrupt act, except as to property conveyed for the purpose of defrauding creditors, and in violation of the provisions of the act, took no greater right in property than the bankrupt had at the time of filing his petition. U. S. Rev. Sts. §§ 5044, 5046. He took such estate only as the bankrupt had a beneficial as well as legal interest in, and which he was required to apply to the payment of the debt. *Dugan* v. *Nichols*, 125 Mass. 43. *Kenney* v. *Ingalls*, 126 Mass. 488. *Donaldson* v. *Farwell*, 93 U. S. 631.

The provision making void conveyances by the bankrupt in fraud of creditors does not apply to conveyances in preference of creditors made more than four months before proceedings in bankruptcy. *Coggeshall* v. *Potter*, 1 Holmes C. C. 75. The only right which the plaintiff as assignee took in these shares was the right to redeem them by paying the debt which they were pledged to secure, and that right was foreclosed by sale of the same at public auction after notice. Gen. Sts. *c.* 151, § 9.

The offer of the plaintiff to prove that Coes & Co. agreed to keep secret the delivery of the certificate and the execution of the power to them, in order that Pond might obtain a false credit at the bank, was properly excluded. For even if a court of equity would refuse relief to any party to such an agreement, that consideration does not establish the right to maintain this

action to recover damages against the bank. It is not shown that the bank had any knowledge or notice of such a corrupt agreement, and, without such knowledge, the defendant cannot be charged with a conversion of the property, because it has delivered a new certificate to one who had an apparently good title. *Exceptions overruled.*